UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIMOTHY M. KONTOGOURIS, WENDY KONTOGOURIS and MICHAEL KONTOGOURIS,<br>    Plaintiffs<br><br>v.<br><br>TASCA AUTOMOTIVE GROUP CT EAST, INC. d/b/a TASCA FORD and SANTANDER CONSUMER USA INC.,<br>    Defendants | CIVIL ACTION NO.<br><br><br><br><br><br><br><br>JUNE 20, 2017 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by consumers residing in Connecticut regarding the purchase and sale of a motor vehicle. Plaintiffs bring this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, Tasca Automotive Group CT East, Inc. d/b/a Tasca Ford ("Tasca Ford"), for engaging in unfair trade practices, including a "yo-yo" sale of a motor vehicle, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of offering financing with Tasca Ford acting as the creditor, upon Plaintiffs' acceptance of this offer, delivering possession of the vehicle to the Plaintiffs, demanding the return of the vehicle, constructively repossessing the vehicle, and coercing the execution of a new, less favorable contract as a condition of retaining it.

2. Plaintiffs allege that Tasca Ford's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Fair Credit Reporting Act, 15 U.S.C. § 1681

*et seq.* ("FCRA"); the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"); Article 9 of the Uniform Commercial Code, Conn. Gen. Stat. §42a-9-101 *et seq.* ("UCC"); and the provisions of the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat.. §36a-770 *et seq.* ("RISFA").

## II. PARTIES

3. Plaintiff Timothy M. Kontogouris ("Timothy") is a consumer and natural person residing in Berlin, Connecticut.

4. Plaintiff Wendy Kontogouris ("Wendy") is a consumer and natural person residing in Berlin, Connecticut, and is Timothy's wife.

5. Plaintiff Michael Kontogouris ("Michael") is a consumer and natural person residing in Norwich, Connecticut, and he is Timothy's uncle.

6. Defendant, Tasca Ford, is a Connecticut corporation that operates an automobile dealership in Berlin, Connecticut.

7. Defendant, Santander Consumer USA Inc. ("Santander") is an Illinois corporation with principal offices in Dallas, Texas.

## III. JURISDICTION

8. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

9. This court has jurisdiction over Tasca Ford because it is a Connecticut company that regularly conducts business in this state.

10. This court has jurisdiction over Santander because it regularly conducts business in this state.

11. Venue in this court is proper, because the Plaintiffs reside in Connecticut and the claims involve a transaction that occurred in Connecticut.

## V. FACTUAL ALLEGATIONS

12. Tasca Ford, as part of its regular business practice, sells vehicles to consumers who require financing.

13. Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and deliver the loan proceeds to Tasca Ford, who would treat the transaction in much the same fashion as a cash purchase. Alternatively, consumers can finance their purchases by entering into retail installment contracts directly with Tasca Ford.

14. Tasca Ford generally does not retain possession of the retail installment contracts, but instead it assigns the retail installment contracts to third party banks or finance companies, who pay Tasca Ford in return for the assignment.

15. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Tasca Ford will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

16. Occasionally, Tasca Ford is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

17. In some instances, in order to avoid losing the sale, Tasca Ford will provide a consumer with a retail installment contract in the hope that it will subsequently assign the contract to a finance company.

18. In other instances, finance companies agree to accept assignment of a retail installment contract subject to certain conditions.

19. Under either situation, Tasca Ford has a general business practice of seeking to bind consumers to the transaction by having them execute retail installment contracts even though it does not intend to honor the contract if it is unable to assign it to a third party.

20. On or about November 8, 2016, Timothy was interested in purchasing a new truck, primarily for personal and household purposes.

21. Timothy went to Tasca Ford and looked at a new 2016 Ford F350 Pick-Up truck (the "Vehicle"), and he completed a credit application.

22. Timothy was unable to obtain financing, and he asked his uncle Michael to co-sign.

23. On or about October 14, 2016, unbeknownst to Plaintiffs and without Wendy's knowledge or consent, Tasca Ford obtained copies of Wendy's credit reports from all three credit reporting agencies.

24. Tasca Ford submitted Wendy's credit information to Ford Motor Credit and Bank of America, who both accessed Wendy's Experian report.

25. Tasca Ford also submitted Wendy's credit information to Ally Bank, Chase and TD Bank, all of whom accessed her Trans Union report.

26. On our about November 8, 2016, Tasca Ford prepared a Purchase Order that listed a "TOTAL CASH PRICE DELIVERED" of $43,328.38.

4

27. On or about November 8, 2016, Tasca Ford also prepared a Retail Installment Contract (the "First Contract") that listed Michael as the Buyer, Timothy as the Seller and Tasca Ford as the "Seller-Creditor", attached as Exhibit A.

28. Wendy paid a cash down payment of $11,300 and received rebates and manufacturer incentives totaling $5,500, for a total down payment of $16,800.

29. The remaining balance of $32,923.38 was financed pursuant to the First Contract which had an annual percentage rate of 10.2% and provided for 72 monthly payments of $615.82.

30. The First Contract included a provision contemplating an assignment from Tasca Ford to Capital One.

31. Michael and Timothy both signed the purchase order and the First Contract, and Tasca Ford delivered the Vehicle to them.

32. Soon after they took delivery of the Vehicle, Wendy received a telephone call from Tasca Ford stating that Capital One needed additional information including copies of bank statements and proof of disability income for Michael.

33. On or about November 11, 2016 Capital One sent an email directed to Michael advising that it needed additional documents to finish processing the credit application including the missing pages of bank statements and of disability income. The requested information was provided to Capital One.

34. On information and belief, Capital One either declined to accept the assignment of the First Contract or it reassigned the First Contract back to Tasca Ford.

35. Tasca Ford called Wendy and demanded that Plaintiffs return the Vehicle because it was unable to assign the First Contract to Capital One.

5

36. Tasca Ford threatened to contact the police if Plaintiffs did not return the Vehicle.

37. Plaintiffs were ready, willing and able to make payments under the First Contract, and they offered to do so.

38. Tasca Ford refused to accept assignment of the First Contract.

39. Although Tasca Ford was contractually obligated to permit Michael and Timothy to retain possession pursuant to the Contract, it was unwilling to do so, and it sent employees to Plaintiffs home and attempted to repossess the Vehicle on or about December 5, 2016.

40. After the attempted repossession of the Vehicle, Tasca Ford agreed to permit Michael and Timothy to retain possession of the vehicle provided that they signed a new retail installment contract (the "Second Contract") attached as Exhibit B.

41. The Second Contract differed from the First Contract in that it provided for an annual percentage rate of 13.78 and 72 monthly installments of $678.35. The total payments under the Second Contract are $4,502.24 more than those under the First Contract.

42. Timothy complained to Tasca Ford that the Second Contract had a higher interest rate than the First Contract, and Tasca Ford told Timothy that Santander set the interest rate and that Tasca Ford could not change that.

43. This was a false and deceptive statement, because, on information and belief, Santander permitted Tasca Ford to "mark-up" the interest rate, which Tasca Ford had done, resulting in a higher rate of interest than the rate approved by Santander.

6

44. Tasca Ford told Plaintiffs that the only way that they could retain the Vehicle was if they executed the Second Contract.

45. Tasca Ford failed to provide Plaintiffs with a copy of the Second Contract and did not provide them with any of the disclosures required under 15 U.S.C. § 1638 in a form that they could keep.

## V. CAUSES OF ACTION

### A. FAIR CREDIT REPORTING ACT
### CLAIMED BY WENDY KONTOGOURIS AGAINST TASCA FORD

46. Tasca Ford violated the FCRA § 1681b(f) by accessing Wendy's credit even though she had not applied for credit.

47. For its negligent violations of the FCRA, Tasca Ford is liable to Wendy for her actual damages, attorneys' fees, and costs pursuant to FCRA § 1681o.

48. Tasca Ford's violation of the FCRA was willful, and Wendy is entitled to the greater of her actual damages or statutory damages of up to $1,000 pursuant to FCRA § 1681 1n and punitive damages.

### B. TRUTH IN LENDING ACT
### CLAIMED BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST TASCA FORD

49. Tasca Ford violated TILA with respect to the First Contract because, to the extent that the extension of credit was conditional, it understated the Annual Percentage Rate, in that the monthly payments presume the extension of credit as of the date of the contract.

50. Tasca Ford further violated TILA because the First Contract did not accurately provide the disclosures upon which financing was ultimately extended.

51. Tasca Ford further violated TILA because it did not provide Plaintiffs Michael and Timothy with a copy of the Second Contract, which contained the truth in lending disclosures, at the time that it was signed.

52. Consequently, Tasca Ford violated TILA by failing to give Plaintiffs Michael and Timothy the required disclosures in a form that they could keep prior to consummation of the transaction.

53. For its violations of TILA, Tasca Ford is liable to Plaintiffs Michael and Timothy for their actual damages, plus statutory damages of $2,000, and a reasonable attorney's fee and costs pursuant to 15 U.S.C. § 1640.

### C. BREACH OF CONTRACT
### CLAIMED BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST TASCA FORD

54. Tasca Ford's failure and refusal to permit Michael and Timothy to retain the Vehicle under the terms of the First Contract constituted a breach of contract.

55. Tasca Ford's attempted repossession of the Vehicle also constituted a breach of contract.

56. For its breach of contract, Tasca Ford is liable to Michael and Timothy for their actual damages, including the increased costs under the Second Contract.

### D. RETAIL INSTALLMENT SALES FINANCING ACT – § 785
### CLAIMED BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST TASCA FORD

57. Tasca Ford's conduct in demanding the return of the Vehicle and requiring the execution of a new contract as a condition of retaining the Vehicle constituted a violation of the repossession provisions of RISFA, Conn. Gen. Stat. § 36a-785.

58. Tasca Ford failed to comply with the provisions of RISFA in conducting the repossession in that it did not provide any of the required notices and did not permit the reinstatement of the First Contract.

59. For Tasca Ford's RISFA violations, Plaintiffs Michael and Timothy are entitled to statutory damages of 25% of the amount paid under the First Contract, or $4,200, pursuant to Conn. Gen. Stat. § 36a-785(i).

### E. RETAIL INSTALLMENT SALES FINANCING ACT – § 786
### CLAIMED BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST SANTANDER

60. Tasca Ford's conduct, as aforedescribed, constituted willful violations of RISFA.

61. Santander has retained the benefit of the contract notwithstanding its knowledge of those violations.

62. Timothy Kontogouris and Michael Kontogouris are entitled to an order that there are no finance charges recoverable under the Second Contract pursuant to Conn. Gen. Stat. § 36a-786.

### F. UCC ARTICLE 9 VIOLATIONS
### CLAIMED BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST TASCA FORD

63. Tasca Ford's conduct in demanding the return of the Vehicle and requiring the execution of a new contract as a condition of retaining the Vehicle constituted an improper repossession within the meaning of Article 9 of the UCC.

64. Tasca Ford is liable to Plaintiffs Michael and Timothy pursuant to Conn. Gen. Stat. § 42a-9-625 for an amount equal to the finance charge plus ten percent of the amount financed as shown on the First Contract, or $19,210.

## G.  CONNECTICUT UNFAIR TRADE PRACTICES ACT
## CLAIMED BY ALL PLAINTIFFS AGAINST TASCA FORD AND BY TIMOTHY KONTOGOURIS AND MICHAEL KONTOGOURIS AGAINST SANTANDER

65. The foregoing acts by Tasca Ford were unfair and deceptive and in violation of CUTPA.

66. The CUTPA violations include *per se* violations pursuant to Conn. Agency Reg. § 42-110b-28(b)(23) to the extent that Tasca Ford delivered the Vehicle before the time that financing had been approved, a violation of Conn. Gen. Stat. § 14-62(h).

67. The actions of Tasca Ford, as described above, have caused Plaintiffs to suffer ascertainable losses and damages in that they became contractually obligated to a higher rate of interest and for higher payments under the terms of the Second Contract.

68. Plaintiff Wendy also suffered an ascertain loss because she paid the cash down payment and because the Vehicle was intended as a household vehicle and she shares household expenses with Timothy. Additionally, the unauthorized access of her credit report negatively impacted her credit score.

69. Santander is also liable for Tasca Ford's CUTPA violations pursuant to the terms of the second contract and, because Timothy and Michael sent prior written notice of their claims to Tasca, pursuant to Conn. Gen. Stat. § 52-572g.

70. For Tasca Ford's violations of CUTPA, Plaintiffs seek actual damages, punitive damages and a reasonable attorney's fee and costs.

71. Additionally, as an equitable remedy, Plaintiffs seek an order modifying the terms of the Second Contract to match the terms of the First Contract.

**Wherefore, Plaintiffs claim** actual damages, TILA statutory damages of $2,000, statutory damages of up to $1,000 pursuant to the FCRA, 25% of the amount paid under the First Contract pursuant to RISFA, the amount of the finance charge plus 10% of the amount financed pursuant to Article 9 of the UCC, an order that no finance charges are recoverable under the Second Contract, punitive damages pursuant to CUTPA, and attorney's fees and costs.

PLAINTIFFS, TIMOTHY M. KONTOGOURIS, WENDY KONTOGOURIS and MICHAEL KONTOGOURIS

By: /s/ *Daniel S. Blinn*
Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com